UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ISIDORO RIVERA, JOSE ALVARADO,
JUAN BUSTILLO, NOBERTO ALVAREZ,
ELSA MEJIA VILLALOBO, BRIAN
FREDERICKS, ELI CHAVEZ, MARTA
VILLATORO, ANA MARIA MORA GOMEZ,

                Plaintiffs,          **MEMORANDUM & ORDER**
  -against-                                06 CV 2613 (DRH) (ARL)

THE INCORPORATED VILLAGE OF
FARMINGDALE, SECATOGUE REALTY, LLC,
JOHN TOSINI, and MICHELLE TOSINI,

                Defendants.
----------------------------------------------------------X

**APPEARANCES:**

**COMMUNITY LEGAL ASSISTANCE CORP.**
Attorneys for Plaintiffs
108 Hofstra University
Hempstead, New York 11549
By:    Stefan Hillel Krieger, Esq.
        Lynn Capuano, Esq.

**NIXON PEABODY LLP**
Attorneys for Plaintiffs
50 Jericho Quad
Suite 300
Jericho, New York 11753
By:    Mark L. Deckman, Esq.


**WALSH MARKUS MCDOUGAL & DEBELLIS, LLP**
Attorneys for Defendant the Incorporated Village of Farmingdale
229 Seventh Street
Garden City, New York 11530
By:    Stephen Paul Markus, Esq.
        Claudio DeBellis, Esq.

**HURLEY, Senior District Judge:**

       Plaintiffs Isidoro Rivera, Jose Alvarado, Juan Bustillo, Noberto Alvarez, Elsa Mejia

Villalobo, Brian Fredericks, Eli Chavez, Marta Villatoro, and Ana Maria Mora Gomez (collectively, "Plaintiffs") bring this action alleging that: (1) defendant Village of Farmingdale (the "Village") violated the Fair Housing Act, 42 U.S.C. §§ 3601 et seq. (the "FHA"); and (2) defendants Secatogue Realty, LLC ("Secatogue"), John Tosini, and Michelle Tosini (collectively, "Defendants") violated the FHA, New York Executive Law § 296(6), and New York Real Property Law § 235-b. Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56.[1] For the reasons that follow, Defendants' motion is granted, and Plaintiffs' claims against them are dismissed in their entirety.

## BACKGROUND

The material facts, drawn from the parties' Local Civil Rule 56.1 Statements, are undisputed unless otherwise noted.

*The Parties*

Plaintiffs are all Hispanic individuals who are former residents of a 54-unit apartment building at 150 Secatogue Avenue (the "Building"), which is located in the Village. The Village is a municipal corporation incorporated pursuant to New York Village Law, and is located in Nassau County, New York. Secatogue is a New York limited liability company with its principal place of business in New York. Secatogue owned the Building from 1999 until July 2006. John Tosini is a member of Secatogue, and Michelle Tosini is an agent for Secatogue.

*Interactions Between John Tosini and the Village*

In 1999, John Tosini met with the Village Clerk and learned that the Village had an

---

[1] The Village separately moved for summary judgment seeking dismissal of Plaintiffs' FHA claim against it. That motion was denied in a separate Memorandum & Order, which has also been issued today.

interest in redeveloping both the Building and its surrounding area. During a second meeting between John Tosini and the Village Clerk, the Village raised the idea of acquiring the Building via eminent domain, but the meeting ended without a clear resolution. In April 2000, John Tosini received a "Public Notice" dated March 28, 2000 from the Village indicating that the Village Board of Trustees would be holding a public hearing to consider a proposal to acquire title to the Building, as well as a neighboring building located at 130 Secatogue Avenue, "for the purpose of constructing housing pursuant to Eminent Domain Procedure Law." (Decl. of John Tosini, dated March 15, 2010 ("Tosini Decl.") ¶ 11.)

Throughout the period between 2000 and 2004, the Village continued to consider the possibility of acquiring the Building and surrounding properties through eminent domain, but never made any official decision in that regard. As a result of this uncertainty, John Tosini concluded by late 2004 that it "did not make fiscal sense for [him] to make capital improvements to the property," although he states that he continued to "make necessary repairs" to the Building. (*Id.* ¶ 21.) In November 2004, John Tosini engaged a real estate agent to represent Secatogue and market the Building for sale because he "had come to the determination that [he] no longer wanted to own apartment buildings." (*Id.* ¶ 30.)

***Sale of the Building***

On December 16, 2004, Fairfield Acquisition, LLC ("Fairfield") signed an agreement of sale with Secatogue for the purchase of the Building.

***Alleged Condition of the Building***

Plaintiffs assert that between 1999, when Secatogue assumed ownership of the Building, and 2006, when the Building was sold to Fairfield, numerous problems existed with its condition.

3

Plaintiffs allege that they, as well as various engineers and inspectors who examined the Building during that time period, either on behalf of the Village or as Plaintiffs' retained experts, have found, *inter alia*: raw sewage spills, cracks in foundation walls, water damage, fire hazards, overflowing refuse containers, evidence of mice and bed bug infestations, mold, collapsed ceilings, and leaks in Plaintiffs' apartments and common areas of the Building. Plaintiffs also allege that they complained to John and Michelle Tosini about these problems, but their complaints were either ignored or inadequately addressed.

## *RELEVANT PROCEDURAL BACKGROUND*

Fairfield was initially named as a defendant in this action, which was commenced on May 25, 2006. Subsequently, however Fairfield reached a settlement agreement with Plaintiffs by which Fairfield agreed to pay nine plaintiffs certain monetary amounts in exchange for Fairfield's dismissal from the suit. On January 17, 2007, Plaintiffs filed an amended complaint reflecting the withdrawal of plaintiffs Lorena Umana and Oscar Ramirez and the addition of three new plaintiffs, Ana Maria Mora Gomez, Orlando Pintor Jimenez, and Marta Villatoro.[2] The Amended Complaint also named John and Michelle Tosini as defendants. (*See* Mag. Judge Lindsay's June 16, 2008 R&R at 4.)

## *DISCUSSION*

### I.     *Summary Judgment Standard*

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other

---

[2]     The parties' subsequent stipulation dismissing Plaintiff Orlando Pintor Jimenez's claims against all defendants was "So Ordered" on August 10, 2009.

documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Delaware & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court, in considering a summary judgment motion, must also be "mindful of

the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions. *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *Id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.'" *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587).

## II. Plaintiffs Claims Under Section 3604(a) of the FHA and Section 296(6) of the New York Executive Law Are Dismissed

### A. Legal Standard

Plaintiffs "allege that Defendants violated the FHA and New York Executive Law § 296(6) (the "NYHRL") by acting in concert with the Village to implement its discriminatory redevelopment plan, the SARP." (Pls.' Opp'n at 20.) Plaintiffs assert, and Defendants do not dispute, that "a concerted action claim is cognizable under the FHA." (*Id.*) Plaintiffs also contend that the NYHRL "explicitly authorizes aiding and abetting liability claims for housing discrimination." (*Id.*) As discussed below, the Second Circuit has not specifically recognized a cause of action under a "concerted action" theory akin to the NYHRL's "aiding and abetting" provision. The Court finds, however, that under any of the standards articulated below, Plaintiffs have failed to establish that Defendants' conduct violated the FHA or NYHRL because Defendants did not have knowledge of any allegedly discrimination action taken by the Village.

1. **The FHA**

Although Defendants do not dispute Plaintiffs' assertion that "a concerted action claim is cognizable under the FHA" (Pls.' Opp'n at 20), Plaintiffs have not cited (nor has this Court's research uncovered) any case law within this Circuit that explicitly so holds. However, one court within the Circuit recently discussed the contours of liability under the FHA. Unlike the NYHRL, discussed below, "the FHA is silent on who can and cannot be sued." *Fair Hous. Justice Ctr., Inc. v. Broadway Crescent Realty, Inc.*, 2011 WL 856095, at *4 (S.D.N.Y. Mar. 9, 2011). "Rather, the FHA 'focuses on prohibited acts' and simply declares that such acts 'shall be unlawful.'" *Id.* (quoting *Meyer v. Holley*, 537 U.S. 280, 285 (2003)) (internal citation omitted). Accordingly, "*anyone* who commits an act set forth in the statute is liable . . . [t]he relevant inquiry is whether [the defendant] committed an act prohibited by the statute." *Id.* (emphasis in the original).

The FHA "prohibits governmental agencies from implementing or enforcing housing policies in a discriminatory manner." *Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003); *see also* 42 U.S.C. § 3604. The FHA "protects against discrimination on the basis of 'race, color, religion, sex, familial status, or national origin.'" *Valdez v. Town of Brookhaven*, 2005 WL 3454708, at *12 (E.D.N.Y. Dec. 15, 2005) (quoting 42 U.S.C. § 3604). "An FHA violation may be established on a theory of disparate impact or one of disparate treatment." *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 425 (2d Cir. 1995).

Claims of disparate treatment under the FHA are analyzed "under the familiar *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), burden-shifting analysis established for employment discrimination cases under Title VII of the Civil Rights Act

of 1964, 42 U.S.C. § 2000e *et seq.*" *Reg'l Econ. Cmty Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 49 (2d Cir. 2002).[3] A plaintiff may "establish a *prima facie* case by showing that animus against the protected group 'was a significant factor in the position taken' by the municipal decision-makers themselves or by those to whom the decision-makers were knowingly responsive." *LeBlanc-Sternberg*, 67 F.3d at 425 (quoting *United States v. Yonkers Bd. of Educ.*, 837 F.2d 1181, 1217 (2d Cir. 1987)). "If the motive is discriminatory, it is of no moment that the complained-of conduct would be permissible if taken for nondiscriminatory reasons." *Id.*

### 2. **The NYHRL**

Section 296(5) of the NYHRL prohibits housing discrimination on the basis of, *inter alia*, "race, creed, color, [and] national origin." N.Y. Exec. Law § 296(5). By its terms, however, Section 296(5) limits liability to: "the owner, lessee, sub-lessee, assignee, or managing agent of, or other person having the right to sell, rent or lease a housing accommodation, constructed or to be constructed, or any agent or employee thereof." *Id.* In any event, even if they are not covered under Section 296(5), Defendants could be subject to liability under the NYHRL's "aiding and abetting provision," which provides: "It shall be an unlawful discriminatory practice for *any person* to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." N.Y. Exec. Law § 296(6) (emphasis added). Plaintiffs assert their claim under Section 296(6), so the Court assumes, without deciding, that none of the

---

[3] Because Plaintiffs do not articulate any facially neutral policy or practice implemented or engaged in by Defendants, they cannot maintain a disparate impact claim against them. *See Reg'l Econ. Cmty. Action Program, Inc.*, 294 F.3d at 53 (dismissing disparate impact claim when plaintiff "does not challenge a facially neutral policy or practice; it challenges one specific act: the denial of a special-use permit").

Defendants fall under the purview of Section 296(5).

"The Second Circuit held that the aiding and abetting provision imposes individual liability 'on a defendant who *actually participates* in the conduct giving rise to a discrimination claim.'" *Fair Hous. Justice Ctr., Inc.*, 2011 WL 856095 at *8 (quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995)) (emphasis in the original). Claims of discrimination under § 296(6) of the NYHRL are analyzed under the same framework as is used for the FHA. *See Fair Hous. Justice Ctr., Inc.*, 2011 WL 856095 at *9 (analyzing claims under FHA and Section 296(6) of NYHRL "under the same standard"); *see also Okolie v. Paikoff*, 589 F. Supp. 2d 204, 221 (E.D.N.Y. 2008); *Elmowitz v. Exec. Towers at Lido, LLC*, 571 F. Supp. 2d 370, 376 (E.D.N.Y. 2008). Accordingly, the Court will analyze Plaintiffs' claims under the FHA and NYHRL in tandem.

### B. Plaintiffs' Claims under Section 3604(a) of the FHA and Section 296(6) of the NYHRL are dismissed

Plaintiffs' assert that Defendants violated the FHA and NYHRL only to the extent that Defendants "acted in concert" with the Village and "knowingly [gave] substantial assistance" to the Village "in its discriminatory conduct." (*See, e.g.*, Am. Compl. ¶ 1.) Accordingly, the Court agrees with Plaintiffs' contention that "Defendants' knowledge of the Village's discriminatory conduct" (Pls.' Opp'n at 21) is an essential element in proving that Defendants violated the FHA or NYHRL. *See LeBlanc-Sternberg*, 67 F.3d at 425 (plaintiff must show discriminatory animus, an element of prima facie case of an FHA disparate treatment claim, "was a significant factor in the position taken by the municipal decision-makers themselves or by those to whom the decision-makers were knowingly responsive") (internal quotation marks omitted); *Suffolk Hous.*

9

*Servs. v. Town of Islip, N.Y.*, 1996 WL 75282, at *9 (E.D.N.Y. Feb. 8, 1996) ("It is plaintiffs' burden to show that race was a motivating factor, although not necessarily the sole motivating factor, in the challenged action.") (citing *Robinson v. 12 Lofts Realty, Inc.*, 610 F.2d 1032, 1042-43 (2d Cir. 1979)). As discussed below, Defendants have offered evidence that they did not, in fact, have any knowledge of any discriminatory action on the part of the Village. Plaintiffs have failed to raise any genuine issues of fact in this regard.

In his declaration in support of Defendants' motion for summary judgment, John Tosini states that "[t]hroughout the entire time discussed herein and continuing through the sale of 150 Secatogue Avenue, my interest in redeveloping my property was purely economically based and had nothing to do with who was leasing the apartments in my building." (Tosini Decl. ¶ 15.) Tosini further states that when he, on behalf of Secatogue, negotiated the contract of sale for the Building with Fairfield, including the provisions therein regarding leasing policies for current tenants, "neither the race, color, religion, sex, familial status or national origin of the existing tenant at [the Building] was of any consideration." (*Id.* ¶ 44.) Finally, John Tosini declares that neither he nor Secatogue "ever knowingly acted in concert with the Village [ ] to provide any assistance in any discriminatory conduct as alleged by the Plaintiffs." (*Id.* ¶ 47.)

Plaintiffs purport to proffer "evidence [that] demonstrates Defendants' knowledge of the Village's discriminatory conduct." (Pls.' Opp'n at 21.) Specifically, Plaintiffs contend that "Mr. Tosini was aware of the Village's redevelopment plan and the related controversy regarding the potential displacement of Hispanics as a consequence of that development." (*Id.* at 21-22.) As evidentiary support for this contention, Plaintiffs cite to John Tosini's deposition testimony that he "might have" read three newspaper articles a "while back": (1) a July 7, 2000 article in the

10

Farmingdale Observer (Pls.' Ex. 177); (2) a November 14, 2004 article in the New York Times (Pls.' Ex. 182); and (3) a May 6, 2005 article in Newsday (Pls.' Ex. 183). (*See* Pls.' 56.1 ¶¶ 226-28; Tosini Dep. at 5-7.) These three articles report on "the ongoing controversy surrounding the Hispanic population and the Village's redevelopment effort." (Pls.' 56.1 ¶ 226.) Plaintiffs also cite to the following excerpt of John Tosini's deposition testimony:

> Q: Do you recall whether anybody raised concern [during the May 15, 2000 public hearing regarding seizing the Building via eminent domain] about the impact of redevelopment in this area on Latinos who lived [at the Building]?
>
> A: I think what I heard was not concerning Latinos. It was just concern with the tenants who lived in the area.
>
> . . . .
>
> Q: . . . Do you remember what was said specifically? What the concerns of the tenants were, what was said?
>
> A: I think it was a concern of where were the tenants going to be during this whole period.

(Tosini Dep. at 124.)

Overall, and after having reviewed the three articles that John Tosini "might have read," (Tosini Dep. at 5-7), the Court finds that Plaintiffs' proffered evidence demonstrates only that John Tosini may have had some awareness that the Village's aspirations to redevelop the Building were raising some level of concerns about "racial tension" within the community. Evidence of this possible awareness, especially when considered in tandem with the undisputed fact that the Village "played no role in the introduction of Fairfield . . . and Secatogue . . . with regard to the sale of [the Building] (*see* Defs.' 56.1 ¶ 13), is not sufficient to raise a genuine issue of material fact to defeat summary judgment. Plaintiffs argue, essentially, that John Tosini was

11

aware – by reading the newspaper – that there was some negative community reaction to the Village's desire to redevelop the Building and surrounding area. Therefore, according to Plaintiffs, John Tosini and Secatogue should be found liable under the FHA and NYHRL as acting "in concert" with the Village because Secatogue sold the Building to a developer who later submitted a permit application to renovate the Building in a manner found desirable by the Village. Carried out to its logical conclusion, this argument would place John Tosini and Secatogue in the untenable position of being held liable under the FHA and NYHRL the moment they sold the Building to *anyone* with plans to redevelop it.[4]

Plaintiffs have proffered no evidence that Michelle Tosini had any knowledge of any allegedly unlawful conduct on the part of the Village. Accordingly, Plaintiffs' claims under Section 3604(a) of the FHA and Section 296(6) of the NYHRL are dismissed as against each of the Defendants.

### C. *Plaintiffs' Purported Claims Under Section 3604(b) of the FHA Will Not Be Considered By the Court*

Plaintiffs contend, for the first time in their opposition papers to Defendants' summary judgment motion, that Defendants violated Section 3604(b) of the FHA by "tak[ing] unfair advantage of members of a protected class in a racially segregated housing market by assessing charges for services and conditions in excess of fair market value." (Pls.' Opp'n at 11.) Plaintiffs assert that a prima facie case based upon "the exploitation theory of discrimination" under the FHA requires a showing of the following: "(1) as a result of racial segregation, dual

---

[4] That John Tosini signed the July 28, 2005 building permit application does not change the Court's decision. John Tosini provided unrebutted evidence that he signed the application at the request of Fairfield because he was "the property owner," and that he did not provide any information for inclusion in the application. (Tosini Decl. ¶ 46.)

housing markets exist; (2) defendants unlawfully took advantage of this situation by demanding unreasonable prices and terms; and (3) anticompetitive factors allowed the Defendants to exploit the minority market." (*Id.* at 12 (citing *Clark v. Universal Builders, Inc.*, 706 F.2d 204, 206 (7th Cir. 1983)).)

Plaintiffs assert that the Amended Complaint contains allegations "that Defendants took advantage of them, collecting above-market rent while allowing the Building to deteriorate in the midst of the Village's redevelopment efforts." (*Id.* (citing Am. Compl. ¶¶ 64-69.) The paragraphs of the Amended Complaint cited by Plaintiffs, however, do not contain allegations that would support such a claim. Rather, the cited paragraphs allege the following: (1) Defendant Secatogue substantially assisted the Village in effectuating its "goal to displace Latinos from the Village;" (2) Beginning in 2003, Defendant Secatogue allowed the condition of the Building to deteriorate to the point that "it violated housing standards;" (3) In 2004, Defendant Secatogue "stopped making any capital improvements" to the Building; (4) Defendants Secatogue simply paid a fine after being issued summonses, but did not make any repairs to the Building; (5) As a result of Defendant Secatogue's alleged neglect of the Building, it fell into a state of disrepair such that "Plaintiffs' apartments were rendered unfit for human habitation and dangerous to life, health and safety." (Am. Compl. ¶¶ 64-69.)

After comparing the allegations in the Amended Complaint to the elements of a prima facie claim under an "exploitation theory of discrimination" in violation of the FHA, the Court finds that the cited portions of the Amended Complaint (and, indeed, no other portion of that pleading) contain allegations sufficient to plead (or even imply the existence of) such a claim. Indeed, the fact that Defendants' moving papers make no mention of any claim under Section

13

3604(b) of the FHA indicates their lack of knowledge or notice of any such claim.

Well-settled case law within this Circuit holds that "'it is inappropriate to consider claims not pleaded in the complaint in opposition to summary judgment.'" *Scott v. City of N.Y. Dep't of Corr.*, 641 F. Supp. 2d 211, 229 (S.D.N.Y. 2009) (quoting *Alali v. DeBara*, 2008 WL 4700431, at *3 n.6 (S.D.N.Y. Oct. 24, 2008)); *see also Flynn v. N.Y. State Div. of Parole*, 620 F. Supp. 2d 463, 489 n.32 (S.D.N.Y. 2009) (declining to consider claim that plaintiff raised for the first time in her summary judgment opposition papers); *Kearney v. Cnty. of Rockland*, 373 F. Supp. 2d 434, 440-41 (S.D.N.Y. 2005) (same) (collecting cases). "'[A] memorandum of law is not a proper vehicle for rewriting or amending the complaint.'" *Ribis v. Mike Barnard Chevrolet-Cadillac, Inc.*, 468 F. Supp. 2d 489, 495 (W.D.N.Y. 2007) (quoting *Anderson v. Asset Corp.*, 329 F. Supp. 2d 380, 383 (W.D.N.Y. 2004)). "Such a step is inappropriate at the summary judgment stage, after the close of discovery, without the Court's leave, and in a brief in opposition to a dispositive motion." *Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp.*, 963 F. Supp. 1342, 1359 (S.D.N.Y. 1997). Accordingly, the Court declines to consider Plaintiffs' claim under Section 3604(b) of the FHA.[5]

### D. Plaintiffs' Claim Under New York Real Property Law 235-b is Dismissed for Lack of Subject Matter Jurisdiction

Plaintiffs also assert a claim against Secatogue pursuant to Section 235-b of New York's Real Property Law ("Section 235-b claim"). (*See* Am. Compl. ¶¶ 152-59.) That statute provides

---

[5] To the extent Plaintiffs wish to move for leave to amend the Amended Complaint to add a claim under Section 3604(b) of the FHA, the appropriate course of action would be to file a letter requesting a pre-motion conference in anticipation of making such a motion. Should Plaintiffs wish to pursue such an avenue, their pre-motion conference letter must be filed within ten days of the date of this Order.

that every lease or rental agreement contains an implied covenant that the premises "are fit for human habitation . . . and that the occupants of such premises shall not be subjected to any conditions which would be dangerous, hazardous or detrimental to their life, health or safety." N.Y. Real Prop. Law § 235-b(1). The Amended Complaint asserts that the Plaintiffs' apartments and common areas were, *inter alia*, infested with vermin and bed bugs, plagued with leaks, mold, and other defects, and that garbage and other refuse was not disposed of properly. (*See* Am. Compl. ¶ 69.)

As an initial matter, the Court must determine whether there is subject matter jurisdiction over Plaintiffs' Section 235-b claim. *See Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000) ("It is axiomatic that federal courts are courts of limited jurisdiction and may not decide cases over which they lack subject matter jurisdiction.") Although not addressed by the parties, "failure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*." *Id.* "If subject matter jurisdiction is lacking, the action must be dismissed." *Id.* at 700-01.

Plaintiffs' sole remaining claim against Secatogue arises under state law, although Plaintiffs still have a viable claim against the Village of Farmingdale pursuant to the FHA. Because there is no diversity jurisdiction here, the basis for subject matter jurisdiction over Plaintiffs' Section 235-b claim could arise only pursuant to 28 U.S.C. § 1367, which provides, in relevant part:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

15

28 U.S.C. § 1367(a); *see also Lyndonville Sav. Bank & Trust Co.*, 211 F.3d at 704 ("In the absence of diversity jurisdiction, a federal court presented with both federal and state claims may hear the state claims only if they are so closely related to the federal questions as to form part of the same 'case or controversy' under Article III.").

Whether Plaintiffs' FHA claim against the Village and Section 235-b claim against Secatogue "form part of the same case or controversy" is "tested by whether they share a 'common nucleus of operative fact,' such that [Plaintiffs] 'would ordinarily be expected to try them in one judicial proceeding.'" *Lyndonville Sav. Bank & Trust Co.*, 211 F.3d at 704 (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)); *see also Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004) (applying "common nucleus of operative fact" test).[6] The Second Circuit has "routinely upheld the exercise of pendent

---

[6] The Court notes that 28 U.S.C. § 1327(c)(3), which permits a district court to "decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction," does not come into play here for two reasons. First, the Court has not determined in the first instance whether supplemental jurisdiction exists over Plaintiffs' Section 235-b claim, so it cannot make the related determination of whether to "decline to exercise" such jurisdiction. Second, "[s]ubsection (c)(3) requires that *all* claims over which it has original jurisdiction must have been dismissed before a district court may rely on that provision as a basis for dismissing the supplemental claims . . . If a defendant faces only state claims, the court must exercise its supplemental jurisdiction over those claims as long as claims remain against other defendants for which original jurisdiction is present." 16 Moore's Federal Practice, § 106.66 (3d ed. 2000) (emphasis in the original); *see also Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004) (noting that "common nucleus of operative fact" test applies "even if the state law claim is asserted against a party different from the one named in the federal claim"); *Brown v. W. Valley Envtl. Servs., LLC*, 2010 WL 5575327, at *8 (W.D.N.Y. Sept. 2, 2010) ("Title 28 U.S.C. § 1367 grants this Court supplemental jurisdiction over state law claims, provided that the Court has original jurisdiction over this case (that is, *at least one federal claim remains pending*).") (emphasis in the original); *Luongo v. Nationwide Mut. Ins. Co.*, 1996 WL 445365, at *4 (S.D.N.Y. Aug. 7, 1996) (exercising supplemental jurisdiction over state law claim against individual defendant which Title VII claim remained pending against co-defendant employer).

jurisdiction where the facts underlying the federal and state claims substantially overlapped or where presentation of the federal claim necessarily brought the facts underlying the state claim before the court." *Lyndonville Sav. Bank & Trust Co.*, 211 F.3d at 704 (internal citations omitted); *see also Briarpatch Ltd., L.P.*, 373 F.3d at 308 ("All of plaintiffs' claims against [defendants] unquestionably derive from a common nucleus of operative fact . . . ."); *Luongo*, 1996 WL 445365 at *4 (finding supplemental jurisdiction existed when federal and state claims "will require many of the same witnesses, much of the same evidence, and determination of many of the same facts"); *DeNuzzo v. Yale New Haven Hosp.*, 465 F. Supp. 2d 148, 151-52 (D.Conn. 2006) (finding federal and state claims "derive from a common nucleus of operative fact because these claims concern the same conduct and will require the same evidence and the determination of the same facts") (internal quotation marks omitted).

On the other hand, however, supplemental jurisdiction has been found "lacking when the federal and state claims rested on essentially unrelated facts." *Lyndonville Sav. Bank & Trust Co.*, 211 F.3d at 704 (collecting cases); *see also Young v. N.Y. City Transit Auth.*, 903 F.2d 146, 164 (2d Cir. 1990) (finding no pendent jurisdiction when federal claim "raises legal issues completely unrelated to those presented by" the state claim); *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 468 (S.D.N.Y. 2008) (finding insufficient showing to invoke supplemental jurisdiction when "none of the events alleged in Gristede's state law . . . claims are relevant to Plaintiffs' [federal law] overtime claims"); *Rivera v. Ndola Pharmacy Corp.*, 497 F. Supp. 2d 381, (E.D.N.Y. 2007) ("Plaintiff's employment relationship is insufficient to create a 'common nucleus of operative fact' where it is the sole fact connecting plaintiff's federal overtime claim and the remaining state law claims."); *Pro Bono Invs., Inc. v. Gerry*, 2005 WL

2429787, at *13 (S.D.N.Y. Sept. 30, 2005) (finding state claim fell "wholly outside the 'common nucleus of operative fact' . . . [when] [t]here is no relation between" state and federal claims). The Second Circuit has recognized that "it is fundamental that needless decisions of state law should be avoided" and that a "district court ought not reach out for issues, thereby depriving state courts of opportunities to develop and apply state law." *Young*, 903 F.2d at 164 (internal quotation marks and alterations omitted).

Thus, the relevant inquiry for the Court is whether a "common nucleus of operative fact" exists between Plaintiffs' FHA claim against the Village and their Section 235-b claim against Secatogue. In that vein, the Court has reviewed the 281 paragraphs of "Additional Material Facts" submitted by Plaintiffs in opposition to the Village's motion for summary judgment,[7] and compared them with the 267 paragraphs of "Additional Material Facts" Plaintiffs submitted in opposition to the present motion. Only one set of facts is common to both claims: In October 2004, a water main broke at the Building, forcing Plaintiffs (and the other tenants) to evacuate. (Pls.' Vill. 56.1 ¶¶ 95, 227.) Shortly thereafter, the Village issued 175 summons against Secatogue for building code violations. (*Id.* ¶ 228.) At a hearing at the Village Court on September 21, 2005, the Village Justice accepted Secatogue's representations that it had rectified, or was in the process of rectifying, the conditions underlying the violations and dismissed the summonses upon Secatogue's payment of a $22,000 fine. (*Id.* ¶ 236.) Plaintiffs assert that no Village representative ever inspected the Building to confirm that Secatogue had made the necessary repairs, and Plaintiffs' expert submitted a report opining that the necessary

---

[7] Plaintiffs' Response to Defendant Village of Farmingdale's 56.1 Statement and Statement of Additional Material Facts, dated April 12, 2010, is hereinafter referred to as "Pls.' Vill. 56.1."

repairs were either never made or were done in a unsatisfactory fashion. (*Id.* ¶¶ 237-46.)

In the context of their FHA claim, Plaintiffs rely on these factual assertions as evidence that the Village deviated from its normal procedure in order to remove any possible obstacle to the Building's renovation, in accordance with the Village's alleged discriminatory redevelopment plan. (*See* Pls.' Opp'n to Vill.'s Mot. for Summ. J. at 28-29.) With respect to their Section 235-b claim against Secatogue, Plaintiffs rely on these factual assertions as evidence of Secatogue's failure to maintain the Building in a condition fit for human habitation. (*See* Pls.' Opp'n at 7-8.)

The Court finds there to be an extremely limited overlap of the facts underlying Plaintiffs' FHA claims against the Village and their Section 235-b claims against Secatogue. Moreover, the overlapping facts will be used by Plaintiffs to support two entirely different legal theories. Given that the remainder of the evidence introduced in support of Plaintiffs' FHA claim will be entirely unrelated to that proffered in support of their Section 235-b claim, the Court finds that Plaintiffs' federal and state claims do not share a common nucleus of operative fact. Accordingly, the Court lacks supplemental jurisdiction to hear Plaintiffs' Section 235-b claim and it is dismissed.

## *CONCLUSION*

For the reasons set forth above, the Defendants' motion for summary judgment is granted, and Plaintiffs' claims against Defendants Secatogue Realty, LLC, John Tosini, and Michelle Tosini are dismissed in their entirety.

**SO ORDERED.**

Dated: Central Islip, New York
       March 30, 2011                                    /s/
                                                          Denis R. Hurley
                                                          Unites States District Judge